Filed 7/7/22  In re Austyn H. CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

<table>
<tr><td>In re AUSTYN H., a Person Coming Under the Juvenile Court Law.</td><td rowspan="6">D079757<br><br>(Super. Ct. No. JCM241567)</td></tr>
<tr><td>THE PEOPLE,</td></tr>
<tr><td>Plaintiff and Respondent,</td></tr>
<tr><td>v.</td></tr>
<tr><td>AUSTYN H.,</td></tr>
<tr><td>Defendant and Appellant.</td></tr>
</table>

APPEAL from a judgment of the Superior Court of San Diego County, Ana Espana and Kathleen Lewis, Judges.  Affirmed.

Lisa A. Kopelman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A wardship petition was filed in the juvenile court pursuant to Welfare and Institutions Code section 602 alleging Austyn H. (the Minor) committed a robbery (Pen. Code, § 211).  An adjudication hearing was held and the court made a true finding on the petition.

At the disposition hearing, the court declared the Minor to be a ward of the court and committed him to the San Diego County Probation Healing Opportunities for Personal Empowerment program for a period not to exceed 480 days.

The Minor filed a timely notice of appeal.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), indicating counsel has not been able to identify any arguable issues for reversal on appeal. Counsel asks this court to review the record for error as mandated by *Wende*. We offered the Minor the opportunity to file his own brief on appeal, but he has not responded.

STATEMENT OF FACTS

Counsel has submitted an accurate summary of the facts of the offense. We will incorporate that statement here for convenience.[1]

On September 29, 2021, Brandon H. was working as a cashier at the Ocean Beach CVS Store. At approximately 10:15 p.m. he was cleaning and preparing to close the store when he and a coworker noticed someone standing outside the store looking inside and repeatedly setting off the automatic door without entering the store.

Brandon was attentive to this because they frequently have shoplifters at the store. The store is close to the beach and at times there are homeless people that come to the store and loiter. This is why he and his coworker spoke about keeping an eye out. He saw an individual "hanging out and looking inside a bunch" for about a half hour. He couldn't hear anything and didn't see him make any hand gestures. He couldn't see whether the person

---

[1]   We do so in nearly verbatim fashion except to sometimes use first names and/or initials in naming third parties involved in the subject offenses to protect privacy as much as possible.

in the window was holding anything because there was shelving against the window which blocked his view.  He could only see the top of his face.

Brandon asked a customer who looked scared about going outside if he was nervous about the people outside.  He asked the customer if they spoke to him, and he said they did.  However, Brandon wasn't aware that there were three people setting off the door until after the incident when he watched the surveillance video.  He followed the customer outside and, "saw him in the parking lot, and went back inside thinking they were leaving."

After he went back into the store to finish cleaning, he was jumped from behind.  He told the person who jumped him, who had a gun, that he was not going to get up to help and to take whatever they want.  He was worried about having his personal property taken and was worried about standing to help them and getting hit in the back of his head if he took his eyes off anyone.

The person with the gun was wearing a ski mask.  He told Brandon to get down and then to stand up and open the drawers.  When Brandon said no the person with the ski mask and gun punched him in the mouth.  Then one of the others grabbed a cash drawer and they "took off."  After Brandon was hit, the gunman grabbed the "other box."  He heard yelling, but he was focused on the person "in [his] face."  He didn't hear what they were saying to each other.  After they left, he got back on his feet.  He didn't see where the three people had gone.  He waited a minute and then went to the back of the store where he found his coworker, Nova who had called the police.

Brandon saw in the store surveillance video that the Minor was the third person to come into the store.  The first male was the one holding the gun and wearing the ski mask, who pushed him to the ground and punched him.  The second male into the store was wearing a white sweatshirt and

3

shorts and he took the first cash register drawer. It seemed like the second male was giving orders to the other two because he was yelling and pointing. Brandon didn't see the Minor do anything inside the store. The Minor didn't make any statements or gestures. He didn't take anything and didn't appear to have a weapon. Brandon was below the counter for most of what happened. From there it appeared like the Minor remained by the doors. The Minor was wearing a black hoodie and dark pants with sneakers.

Officer Joshua Symonette is a Chula Vista police officer assigned to the street team gang suppression unit. On September 30, 2021, Symonette and his partner Officer Martin were dispatched to the area of 600 Palomar Street in response to a radio call of a suspect displaying a firearm in Boot World. They noticed three subjects that matched the description and conducted a high-risk traffic stop, placing the subjects in handcuffs and patting them down.

While being detained, one of the subjects, later identified as R.F., dropped a black ski mask in the bushes. Symonette contacted R.F.'s probation officer, Bobby Burns, because R.F. was a "gang juvenile." In court, Symonette identified the two other subjects detained as A.R. and the Minor. Neither of them dropped anything. No weapons or contraband were found on the Minor.

Probation Officer Bobby Burns testified that he supervises R.F. and has interacted with him for three plus years. He became aware of a robbery that involved R.F.'s cousin, A.R. at a CVS. Burns recognized A.R., and knowing that he frequently associates with R.F., believed R.F. was potentially a subject in the robbery. Once Burns recognized A.R. from the Be on the Look Out Bulletin, he notified the detective listed on the bulletin and identified the two other suspects.

4

When he received a call from Chula Vista Police about R.F. being detained on September 30, 2021, Burns immediately asked if he was with A.R. and the Minor. He asked this due to having frequent contacts in the community with the three subjects together. Burns has known the Minor for two and a half years because he previously supervised him.

On September 29, 2021, San Diego Police Department Detective Peplowski was working the night shift and was dispatched to the CVS in Ocean Beach. He talked with the officers that were investigating the incident and met with the witnesses and victims. One of the witnesses was connected to a business called O.B. Laundry.

O.B. Laundry is located on the corner of the parking lot south of the CVS. O.B. Laundry has a surveillance camera that faces the parking lot and the CVS. Detective Peplowski viewed the video and saw a silver Volkswagen Golf enter the parking lot and park in front of the O.B. Laundry camera. He saw the lone driver get out of the car, smoke a cigarette or vape, and wait for a few minutes. The video then showed three males running from the CVS through the parking lot with two cash drawers. The time stamp on the video displayed 22:46 on September 29, 2021. The Volkswagen was across the parking lot from the CVS, about a half block. The driver of the Volkswagen is then seen hurriedly go to the driver's seat. The three males also got into the car. The male who got into the front passenger seat was wearing a white or light-colored shirt and the other two were wearing dark clothing. The male who got into the rear driver's side was wearing long, dark pants and the other was wearing shorts. The car left the parking lot at 22:50. It was in the parking lot for a total of 4 minutes.

On September 30, Burns notified Peplowski that he believed he had identified the three suspects. Later in the evening Peplowski received a call

5

from Officer Symonette advising that he had the three suspects in custody in Chula Vista. Peplowski went to Chula Vista Police Department, and photographed the three suspects, A.R., R.F., and the Minor. When the Minor was arrested, he had $112. He had no weapons or contraband in his possession.

When Peplowski searched R.F., he found a cell phone. In the phone he retrieved two photographs date stamped September 29, 2021 showing the Minor at a park bench holding a gun. Additionally, Peplowski found a video of the Volkswagen Golf dated September 28, 2021. He also found a video from September 29, 2021, dated 11:05 p.m. showing four males inside a car counting money. The video showed the front passenger, a male Hispanic in a white shirt, the rear driver side passenger, and the male in the left driver side counting money in his lap. He could hear R.F. talking. Peplowski found an additional video taken on September 30 showing a stack of money on the floor of a car and the camera being turned around to show R.F., A.R. and the Minor as well as a fourth unidentified male. The videos and photographs did not appear to come from social media as opposed to taken by R.F.'s phone.

Peplowski estimated the robbery took approximately a minute. The video showed the first subject with the mask run into the store, the second jog into the store and the last male walk into the store. Brandon was about 10 to 20 feet from the door when he was "tackled." He saw R.F. jump the counter, get the second register and run from the store. Peplowski estimated it was 30 seconds from when R.F. entered the store until he left. Peplowski could not tell if the gun R.F. had was real or operable.

The three suspects were transported to the San Diego Police Department and placed in an unlocked holding cell in the robbery unit. The holding cell is both video and audio recorded. They were in the cell for about

6

three hours while Peplowski was doing paperwork and getting their phone calls for them.

While in the cell the Minor was recorded saying that he knew he would be arrested for the crime and that his face was on the video. R.F. admitted the involvement of all three. Peplowski had no doubt that the Minor heard R.F.'s statement because the Minor was next to R.F. at the time. The Minor said he thought they got caught because they went out tonight. The Minor also said on the recording if he would be released that night he would hurry and spend all the money. When R.F. said, "We did it," the Minor did not dispute the statement. After Peplowski arrested the three, the Minor asked if he could have his phone back if he pled guilty.

R.F. told the detective that the Minor was the most upset about getting caught because he didn't want to do the robbery.

## DISCUSSION

As we have noted appellate counsel has submitted a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in compliance with *Anders v. California* (1967) 386 U.S.738 (*Anders*), counsel has identified the following issue that was considered in evaluating the potential merits of this appeal: Whether the trial court erred in allowing statements made by a co-arrestee in evidence as adoptive admissions.

We have reviewed the entire record as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented the Minor on this appeal.

7

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

IRION, J.

DO, J.

8